IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NANCY J. DRESCHER, | ) Case No. 5:21-cv-2094 |
| | ) |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) THOMAS M. PARKER |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Nancy J. Drescher, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Drescher challenges the Administrative Law Judge's ("ALJ") negative findings on the sole basis that the ALJ failed to explain why his residual functional capacity ("RFC") findings did not include the state agency consultants' opinion that she required a "flexible work schedule."[1] Because any error in the ALJ's explanation for why that limitation was not included in the RFC was harmless, I recommend that the Commissioner's final decision denying Drescher's applications for DIB and SSI be affirmed.

---

[1] Drescher separately challenges the constitutionality of the Social Security Administration. ECF Doc. 9 at 10–14. Because Drescher has withdrawn that issue, it is not addressed in this Report and Recommendation. ECF Doc. 13.

I.      **Procedural History**

On January 23, 2020, Drescher applied for DIB and SSI.[2] (Tr. 15). Drescher alleged that she became disabled on January 1, 2014, due to: (i) chronic inflammatory demyelinating polyneuropathy; (ii) high blood pressure; (iii) high cholesterol; (iv) chronic obstructive pulmonary disease; (v) neuropathy; (vi) fibromyalgia; (vii) depression; (viii) gastric reflux disease; and (ix) anxiety. (Tr. 216, 223, 234, 236, 261). The Social Security Administration denied Drescher's application initially and upon reconsideration. (Tr. 84–100, 103–20). Drescher requested an administrative hearing. (Tr. 142).

On May 3, 2021, ALJ Michael Schmitz heard Drescher's case telephonically and denied her claim in a May 12, 2021 decision. (Tr. 15–30, 39–76). In doing so, the ALJ determined at Step Four of the sequential evaluation process that Drescher had the RFC to perform sedentary work, except that:

> [Drescher] may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; [Drescher] must avoid concentrated exposure to humidity, vibration, extremes of heat and cold, pulmonary irritants, such as dust, odors, gases, fumes and poor ventilation, and must avoid all exposure to unprotected heights, moving mechanical parts, and operation of a motor vehicle; [Drescher] is limited to the performance of simple, routine, repetitive tasks, conducted in a setting free of high production rate pace [as is found in assembly line work], which setting requires no more than occasional, superficial [defined as precluding group, tandem or collaborative tasks, as well as tasks involving sales, arbitration, negotiation, confrontation, conflict resolution, the management of, persuasion of, or direction of, others] interaction with co-workers, supervisors and the public, which setting is routine, in that it contemplates no more than occasional changes in workplaces tasks or duties, easily explained and/or demonstrated in advance of gradual implementation into the job's processes.

---

[2] The administrative record (ECF Doc. 8) provides varying filing dates for Drescher's applications. *See* (Tr. 15, 220, 232, 234, 236). The parties likewise cite different filing dates. *Compare* ECF Doc. 9 at 2, *with* ECF Doc. 11 at 2. Because the filing date is immaterial to the basis upon which Drescher challenges the ALJ's decision, I will rely on the filing dates as described in the ALJ's decision. (Tr. 15).

(Tr. 21–22). Based on vocational expert testimony that someone with Drescher's age, education, and RFC could perform other work, the ALJ denied Drescher's applications. (Tr. 29–30). On September 8, 2021, the Appeals Council declined further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1–3). On November 5, 2021, Drescher filed a complaint to obtain judicial review. ECF Doc. 1.

## II.     Evidence

### A.      Personal, Educational, and Vocational Evidence

Drescher was born on December 6, 1973. (Tr. 216). She was 40 years old on the alleged onset date. (Tr. 84). She completed two years of college and was a certified nurse assistant. (Tr. 47, 262). She had past relevant work as a delicatessen counter-clerk, cook, laundry aide, and nurse aid, which the ALJ determined she was no longer able to perform. (Tr. 28, 47–49, 263).

### B.      Relevant Medical Evidence

Drescher contests only the adequacy of the ALJ's explanation for not including in his RFC determination limitations found by the state agency psychological consultants; thus, its it unnecessary to summarize the medical and non-medical evidence related to her other impairments.

Drescher has suffered from anxiety, which has been treated with Ativan, since at least August 28, 2013. (Tr. 471, 502, 517, 581). The Ativan helped with preventing chest pain, racing heart and irritation. (Tr. 502). It also helped keep her "calm and from flying off the handle." (Tr. 517). She has not, however, received treatment from a mental health provider.

On June 25, 2019, Drescher's treating nurse practitioner replaced Ativan with hydroxyzine pamoate, which was also used to treat her polyneuropathy. (Tr. 456). On July 25, 2019, she reported doing better with hydroxyzine and was interested in antidepressants that also

treated anxiety. (Tr. 443). She was additionally prescribed duloxetine to treat her anxiety. (Tr. 448).

On September 9, 2019, Drescher reported that with duloxetine she was "not flying off the handle like she was," but she still had "intense" anxiety episodes. (Tr. 436). On December 5, 2019, Drescher's treating neurologist discontinued her hydroxyzine and duloxetine and prescribed Lyrica. (Tr. 332–33, 427).

Throughout Drescher's treatment history, she reported symptoms of anxiety and depression. *See* (Tr. Tr. 326, 342, 385, 389, 430, 446, 454, 484, 487, 497, 505) (Anxiety); (Tr. 353, 357) (Depression); (Tr. 321, 535, 549, 555, 562) (Anxiety and Depression). On mental status exam, Drescher consistently exhibited "normal" attention and concentration. *See* (Tr. 358, 431, 440, 447, 455, 468, 475, 483, 489, 499, 506, 515, 521, 528, 537, 545, 550, 556, 576, 579, 626, 633).

### C. Relevant Opinion Evidence

#### 1. Consultative Examiner – Bryan J. Krabbe, PsyD

On September 2, 2020, Bryan J. Krabbe, PsyD, evaluated Drescher. (Tr. 409). Drescher reported among her symptoms: (i) poor quality mood control; (ii) feeling worthless; (iii) listlessness; (iv) difficulty concentrating; (v) social withdrawal; (vi) recurrent distressing memories; (vii) irritability; and (viii) hypervigilance. (Tr. 411). Drescher stated that her daily activities consisted of watching television and listening to music. *Id.* She could perform activities of daily living, albeit slowly. *Id.* In describing her work history, Drescher stated that she had no difficulties with focus or timely completing tasks, but she reported problems managing work stress and remembering appointments and medication. *Id.*

4

On mental status examination, Drescher appeared nervous (apprehensive facial expression and trembling).  (Tr. 412).  With respect to attention and concentration, Drescher: (i) had no difficulty conversationally or responding to direct questions; (ii) counted backwards from 100 by 7s for 3 iterations in 30 seconds with no errors, which was 2 iterations less than what suggested "adequate" attention and concentration; and (iii) counted backwards from 20 by 3s in 12 seconds with zero errors, which suggested "adequate" attention and concentration.  *Id.*

Dr. Krabbe did not express specific attention and concentration limitations.  *See* (Tr. 414–15).  Dr. Krabbe stated, however, that Drescher's difficulty counting backward from 100 by 7s suggested "some" difficulty with attention and concentration, though she displayed "adequate" task persistence.  (Tr. 414).  Dr. Krabbe further stated that Drescher had "satisfactory" attention and concentration skills.  (Tr. 413).

2. **State Agency Consultants**

On September 6, 2020, Robyn Murry-Hoffman, PsyD, evaluated Drescher's mental capacity based on a review of the medical evidence.  (Tr. 89–91).  As relevant here, Dr. Murry-Hoffman found that Drescher was moderately limited in her ability: (i) to maintain prolonged attention and concentration; and (ii) to complete a normal workday without interruption from her psychologically-based symptoms or perform at a consistent pace without an unreasonable number of length or rest periods.  (Tr. 89–90).  In functional terms, Dr. Murry-Hoffman stated that Drescher "can complete 1-3 step and some 4 step instructions that are routine and familiar.  Occasional issues w a/c that can be mediate[d] by a flexible break schedule.  Can complete task that are not fast-paced by nature and are not production-driven."  (Tr. 90).

On January 8, 2021, Aracelis Rivera, PsyD, concurred with Drescher's assessment.  (Tr. 108–10).

### D. Relevant Testimonial Evidence

Drescher testified at the ALJ hearing that her anxiety caused panic attacks, which occurred two to three times per week and felt like a "heart attack." (Tr. 57). Drescher testified that if she had to drive somewhere, she usually had an anxiety attack before she got out to her driveway. (Tr. 59). So long as she did not leave the house, she was "okay." (Tr. 66). She still, however, took her anxiety medication three times per day. *Id*.

Drescher testified that she also suffered from depression, which caused frequent crying spells. (Tr. 57). She treated her mental impairments with medication exclusively. (Tr. 58).

Vocational expert ("VE") Lee Knutson testified that a person with Drescher's age, education, and the ALJ's hypothetical limitations could not perform her past relevant work. (Tr. 67, 70-71). The VE testified the person could perform work at the sedentary exertional level, such as a weight tester and document preparer. (Tr. 71–72). If limited to occasional interaction with supervisors and work in isolation, the VE testified his answer would not change. (Tr. 72–73). The VE testified that a person could not work if they were off task more than 15% of the time, excluding breaks (8 minutes per hour). (Tr. 73).

### III. Law & Analysis

#### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be

6

overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

However, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

### B.  Step Four - RFC

Drescher argues that the ALJ failed to apply proper legal standards in explaining his RFC findings. ECF Doc. 9 at 6–10. Specifically, Drescher argues that the ALJ did not include RFC findings consistent with the state agency consultants' opinion that Drescher needed a flexible break schedule to mediate her attention and concentration limitations or explain why that portion of their opinion was rejected. ECF Doc. 9 at 7–8. Drescher argues that the lack of explanation

7

on how that portion of the state agency consultants' opinion was considered constitutes a failure to build an accurate and logical bridge. ECF Doc. 9 at 8.

The Commissioner disagrees, arguing that the ALJ adequately considered state agency consultants' opinion of Drescher's attention and concentration limitations and provided sufficient explanation for not including greater RFC limitations. ECF Doc. 11 at 15–16. The Commissioner further argues that: (i) Drescher has not pointed to evidence substantiating the need for flexible breaks; and (ii) any error was harmless because the disability examiner at initial and reconsideration levels found that Drescher could perform other work despite the exact limitation about which Drescher now complains. ECF Doc. 11 at 16.

In her reply brief, Drescher argues that no part of the ALJ's analysis of the opinion evidence adequately covers the omitted attention and concentration limitation. ECF Doc. 12 at 3–4.

At Step Four of Social Security Administration's sequential process, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how [he] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2)[3].

The ALJ failed to apply proper legal standards in his assessment of the state agency consultants' opinion. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. In analyzing the opinion

---

[3] Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5).

8

evidence, ALJ discussed the following aspects of the state agency consultants' opinions: "The state agency psychological consultants … each indicated that [Drescher] would be able to perform one-to-three step, and some four-step tasks if routine and familiar to her, with no fast pace or production demands, involving superficial interaction with others and infrequent changes." (Tr. 27). The ALJ did not mention the state agency consultants' opinion that Drescher had occasional attention and concentration deficits that could be mediated by a "flexible break schedule," which was the limitation sandwiched between the limitations the ALJ expressly considered. (Tr. 90).

The ALJ also did not mention the "flexible break schedule" limitation in explaining his reasons for finding the state agency consultants' opinion persuasive:

> Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions and each is well versed in the terminology and analytical framework employed in the disposition of these claims. The record shows a claimant with chronic anxiety and depression. These would be expected to, and the record support[] does (3F/4), cause at least periodic deficits of focus and concentration. However, the claimant exhibits normal intellectual function and a normal fund of knowledge (3F/4), (1F/40). Her memory and cognition are described as intact or normal (1F/40), (7F/7). She reliably exhibits normal attention and concentration (1F/40), (2F/6, 22), (4F/32, 60), (7F/6). In a setting, consisting of tasks simple and routine, conducted free of anxiety- or frustration-inducing production pressures, [Drescher] appears to have retained sufficient, residual, cognitive function to serve as [a] "backstop" against these periodic deficits from becoming fatal to competitive work. [Drescher] has described difficulties with others in past workplaces (5E/7), and presents as anxious and tremulous on meeting a new doctor (3F/4). However, she has no forensic history (3F/2), is demonstrably able to function in public settings, such as stores (5E/4), interacts weekly with her mother and sisters (5E/5), and is reliably described in pro-social terms (2F/6, 22), (4F/32, 60), (7F/6). In a setting where both frequency, and potential for escalation in the intensity, of her interaction is controlled, she appears to have retained sufficient, residual, social function to engage in competitive work. [Drescher] has described anxiety-driven difficulties with stressors (5E/7). However, by her own admission, [she] remains "okay" with changes in routine (5E/7). She is said to retain adequate insight and judgment, sufficiently to allow her to make decisions independently and order her living arrangements efficiently (3F/5). For at least a portion of the period relevant to this claim, and without the need of formal psychotherapy, [Drescher] was able

>to serve as the caregiver to her parents, and to her husband, following a cardiac surgery (4F/138). In a setting, consisting of tasks simple and routine to begin with, conducted free of anxiety- or frustration-inducing production pressures, where [Drescher] would not be asked to respond to constant change, change imposed suddenly, or without advanced warning, she appears to have retained sufficient, residual, adaptive function to engage in competitive work. These opinions overstate, to [a] mild degree, [Drescher's] cognitive, social, and adaptive abilities. Nevertheless, they remain broadly consistent with, and supported by, the overall evidence of record and are persuasive.

(Tr. 27).

The Commissioner argues that the ALJ's reasoning adequately explained why no greater limitations were included in the RFC. ECF Doc. 11 at 15–16. The logical implication of the Commissioner's argument is that the ALJ's reasons were sufficient to explain why the flexible-break limitation was either omitted or rejected. But if the ALJ intended to reject this limitation, it was incumbent upon the ALJ to say so in his decision. *See* SSR 96-8p, 1996 SSR LEXIS 5, at *20 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain the opinion was not adopted."). And the ALJ was required to do so in sufficient terms to allow us to follow his reasoning in order to allow for meaningful review. *Fleischer*, 774 F. Supp. 2d at 877, 882.

None of the ALJ's reasons sufficiently explained his rejection of the flexible-break limitation determined by the state agency consultants. No treating source or consultative examiner in the record stated that Drescher retained sufficient cognitive function to serve as a "backstop" against her periodic attention and concentration deficits. Rather, it seems that the ALJ made his own independent medical finding of Drescher's degree of cognition – something he cannot do. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 246 (6th Cir. 2016).

Drescher's lack of a dedicated mental health treatment was a relevant factor for the ALJ to consider, especially given the lack of evidence in the record explaining why Drescher never

10

sought treatment. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). But a lack of dedicated treatment by a mental health provider would not, on its own, be inconsistent with the need for a flexible break schedule to accommodate the anxiety symptoms for which she regularly took medication.

Drescher's ability to shop, interact with family on a weekly basis, and interact in pro-social terms would be relevant to her ability to interact with others but not her ability to pay attention and concentrate for 8 hours per day, 40 hours per week. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). Similarly, Drescher's ability to manage changes in routine, make independent decisions, and order her "living arrangements efficiently" would not explain whether she was capable of maintaining attention and concentration at a workplace without greater than the allotted amount of break periods. And Drescher's ability to care for her parents in 2015 would also not necessarily be inconsistent with the state agency consultants' opinion in 2020 and 2021 that she needed a flexible break schedule. (Tr. 27) (citing Tr. 553).

Despite these concerns, I find that the ALJ's articulation error was harmless, but for reasons different than those offered by the Commissioner. *Rabbers v. Comm'r SSA*, 582 F.3d 647, 654 (6th Cir. 2009). The state agency consultants did not explain what a "flexible break schedule" encompassed. Other courts within this district have observed that the term "flexible break schedule" has not been defined by the Sixth Circuit. *Scott v. Saul*, No. 5:18 CV 2897, 2020 U.S. Dist. LEXIS 83069, at *7-8 (N.D. Ohio May 12, 2020); *see also Walker v. Saul*, No. 1:20-cv-0504, 2021 U.S. Dist. LEXIS 256953, at *22 (N.D. Ohio Apr. 2, 2021), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 71064 (N.D. Ohio Apr. 18, 2022). Without further articulation by the state agency consultants as to what they meant by the "flexible break schedule" limitation, that portion of their opinion does not qualify as a medical opinion under the

11

regulations. See 20 C.F.R. § 1513(a)(2). Thus, the ALJ was neither required to incorporate the limitation into the RFC nor give an explanation as to why that limitation was not incorporated into the RFC. See Walker, No. 1:20-cv-0504, 2021 U.S. Dist. LEXIS 256953, at *22 (concluding similarly).

### IV. Recommendation

Naturally, Drescher – and the court – would have preferred a perfectly articulated ALJ decision; and it is understandable why Drescher has concerns about the apparent omission of a limitation referred to by the state agency evaluators that was not included in the ALJ's RFC finding. But perfection is not the standard in our evaluation of the Commissioner's decisions. The ALJ is required to report on all appropriately articulated medical opinions, whether they are accepted and included or rejected and excluded. The ALJ is not required to respond to vague, ill-defined limitations. Here, all the ALJ would have had to do to put to rest the argument Drescher now makes was to state that the "flexible break schedule" limitation was vague and not sufficiently defined. Remanding the case to have the ALJ express such a conclusion would be a needless formality, which would not result in an award of benefits for Drescher. As a result, I recommend affirmance of the Commissioner's final decision. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Dated: August 17, 2022

Thomas M. Parker
United States Magistrate Judge

12

---

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, \*6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).